### WOLFGANG EICH

### *vs.*

### OSCAR TAYLOR.

When a motion for a new trial is made on account of the absence of a material witness, and an affidavit of the witness is presented on such motion stating that at the request of the party he intended to have been in attendance upon the court to testify for said party, but was disabled so that it was physically impossible for him to be in attendance at the trial; that the sole reason of his absence was the physical impossibility of being there at the time; and showing that his testimony was material to the party; but it does not appear that any subpœna had been taken out by the party for the witness, or any steps taken which would enable the party to enforce the attendance of such witness at the trial, nor that the defendant was unaware of the facts to which the witness would testify; and the defendant went to trial without objection, or motion for continuance; such facts show no diligence of the party to procure the attendance of the witness, nor do they make a case of accident or surprise against which ordinary prudence could not have guarded, and are no ground for a new trial.

When there is a conflict of testimony in a case from which different persons

Eich v. Taylor.

might reasonably draw opposite conclusions, this court will not disturb the verdict of the jury on the ground of insufficiency of the evidence.

In an action of replevin for a mare, the plaintiff proved the sale of the mare claimed by him by A. to B., by B. to C., by C. to D , and by D. to plaintiff. The defendant made title to the mare from a different source and through a different channel. The case turned upon the question of the identity of the mare in controversy, with that claimed by the parties respectively. The mare sold by A. to B., and by B. to C., was described by certain witnesses. B. was shown to be the owner of the mare sold by A. to B., and by B. to C., on the 20th of January, 1866, *the date of the sale by A. to B. did not appear except that it was prior to that date.* The defendant introduced two witnesses to show that the mare sold by A. to B., and B. to C., was not the mare in controversy; these witnesses testified that B. owned a mare from Nov. 17, 1865, to Jan. 3d, 1866, and described the mare fully and minutely; the description of the mare given by them, corresponded with the description given by the other witnesses of the mare sold by A. to B., and by B. to C., and tended to show that it was not the mare in controversy. *Held,* upon this state of facts, that the testimony of the two witnesses introduced by the defendant, tended to prove that the mare owned by B. from Nov. 17, 1865, to 3d Jan., 1866, was the mare sold by A. to B. prior to the 20th of Jan., 1866, and the mare sold by B. to C., and it was error in the court to charge, that in order to attach any weight to the evidence of such witnesses as to the character and description of the mare owned by B. as above stated, the jury must first find from the evidence that such mare was the mare sold by B to C.

It was error upon being requested by the defendant thereto, to refuse to charge the jury that, " If they find there is any evidence in this case which tends to show that the mare testified to by the said two witnesses of the defendant as owned by B. from Nov. 17, 1865, to January 3d, 1866, was the same mare sold by B. to C., they should take into consideration such evidence, and give it such weight as, with all the evidence in the case, it is entitled to."

That the error was not cured by the court instructing the jury, that they should take all the evidence in the case into consideration in arriving at a conclusion as to whether the mare testified to by the two witnesses of the defendant above mentioned, was the same mare sold by B. to C. That this instruction must be construed in connection with the instruction given at the request of the plaintiff, and is either qualified by it, or contradictory to it, and in either case erroneous.

Appeal from an order of the district court for Stearns county, denying defendant's motion for a new trial.

The case is fully stated in the opinion of the court.

EDWIN M. WRIGHT, and HAYS & KERR, for Appellant.

E. O. HAMLIN, for Respondent.

*By the Court.*—McMILLAN J.—This is an appeal from an order of the district court denying the appellant's motion for a new trial.

The first ground upon which the motion for a new trial was based, is accident and surprise, which ordinary prudence could not have guarded against, to-wit: the absence of a witness necessary and material for the defendant upon the trial. In the affidavits used in support of this ground for a new trial, the materiality of the testimony of the witness is clearly shown; the only statements contained in the affidavits, however, in regard to the cause of the absence of the witness at the trial, and the diligence used to procure his attendance thereat, are in the affidavit of the witness himself, and are as follows: "And I further say, that at the request of said Taylor it was my intention to have been in attendance upon said court to testify for said defendant upon the trial of said action in June last; that I was called to Lake Superior on business, and was there disabled so that it was physically impossible for me to be in attendance upon said court at the said trial; that the sole reason of my absence on said trial was the physical impossibility of my being there at that time."

It does not appear by either of the affidavits that a subpœna was taken out by the defendant for the witness; or any step taken which would enable the defendant to enforce the attendance of the witness, under any circumstances; nor that the defendant was not fully aware of the facts to which the witness would testify.

Eich v. Taylor.

The case had been twice tried without an agreement of the jury on either trial. The defendant at this time made no motion for a continuance, but so far as the case shows went to trial without objection.

The affidavit does not state what the nature of the disability was, nor any of the circumstances relating to it. Such facts show no diligence upon the part of the defendant to procure the attendance of the witness, nor do they make a case of accident or surprise, against which ordinary prudence could not have guarded. They furnish, therefore, no ground which would justify or authorize a new trial.

The second ground of this motion is, that the verdict is not justified by the evidence.

The action is replevin for a mare, and the great point in controversy was the identity of the animal. A large number of witnesses were sworn on either side, and testified on the subject; the testimony of the witnesses for each party, tending to support the claim of the party in whose behalf they were called, and making a conflict of testimony from which different persons might reasonably draw opposite conclusions, and presenting a case peculiarly within the province of a jury to determine. Under such circumstances it is well settled that the court will not disturb the verdict on the ground of insufficiency of evidence. *Johnson vs. W. & St. P. R. R. Co.*, 11 *Minn.* 296.

After the summing up of the case by counsel, at the request of plaintiff, the court charged the jury: " That in order to attach any weight to the evidence of Ensign and Thompson as to the character and description of the horse boarded by them for Elisha Stiles, the jury must first find from the evidence that such horse was the horse traded by Stiles to Constans;" to which the defendant's counsel excepted. The defendant's counsel then requested the court to modify said instruction

by giving to the jury in connection therewith the following, to-wit: "If the jury find that there is any evidence in the case which tends to show that the mare testified to by the witnesses Ensign and Fuller Thompson, as kept by them for Elisha Stiles, was the same mare sold by said Stiles to Constans, as testified by Constans, they should take into consideration such evidence, and give it such weight as, taken with all the evidence in the case, it is entitled to;" which was refused by the court, but the court did instruct the jury, "that they should take all the testimony in the case into consideration in arriving at a conclusion as to whether the mare, testified to by Ensign and Thompson was the same mare sold by Stiles to Constans;" to which the defendant excepted.

In order to determine the questions arising under these exceptions, it will be necessary to advert to the facts in the case as they appear from the testimony. The action, as we have already said, is replevin for a mare. The plaintiff claimed and there was evidence tending to show, that he purchased the mare on the 15th of May, 1868, from one John Gross; that Gross got her by trading another horse for her, from William Constans in St. Paul, the last of May, 1866; that Constans bought her from Elisha Stiles, of Minneapolis, 3d of February, 1866, having had her on trial ten days or two weeks previous thereto; that one Cal. Church sold the mare to Stiles, but the date of this sale does not appear.

The defendant claimed, and there was testimony tending to show, that he bought the mare from one Grady in the summer or fall of 1864, who bought her of Charles Long; that on the last of March, or first of April, 1866, the mare strayed or was stolen from defendant; that defendant found her running on the prairie on 27th of June, 1868, (plaintiff claiming her) and took her with plaintiff's consent; after which plaintiff de-

Eich v. Taylor.

manded her back, and defendant refused to return her, where-upon this action was commenced.

The point in dispute, and upon which the case turns, is the identity of the mare in question with the one claimed by the parties respectively.

The defendant for the purpose of proving that the mare sold by Stiles to Constans, and owned by the plaintiff, was not the mare in controversy, called the two witnesses, Wm. H. Ensign and Fuller Thompson, who testify, that they kept a livery stable in Minneapolis; that they boarded a chestnut mare for Elisha Stiles from the 17th November 1865, till 3d January 1866; describe minutely the mare they thus boarded, testify-ing, among other things, that she had the letters, U. S. branded on her left shoulder, and C. on her hip, which hip they could not state, but Thompson thinks, the left hip; both testify that these brands appeared to be permanent brands, and they think were permanent brands; that they had examined the mare in controversy, that there was a mark on her shoulder, but that it was not U. S., and that there was no brand on her hip, and their testimony tending in other respects to show that the mare they boarded for Stiles was not the mare in controversy. They also testify that during the time they kept the mare for Stiles he had no other mare.

One Asa Libby was also sworn and testified as follows: " I saw Cal. Church in Minneapolis. He said he once owned the mare Stiles sold to Constans.. We then talked about the mare. He said she had a plain U. S. branded on her shoulder and C. on her hip; that if this mare had not the same marks, it was not the same mare. He asked me to examine her for the marks. I did examine her, here in St. Cloud. She had no U. S. or C. on her; found scar on left shoulder, small one; never was U. S. I know the mare." This testimony of Libby was received without objection.

Constans on being re-called, on his cross-examination says : " Cal. Church sold the mare I sold to Gross, to Elisha Stiles, and I bought her of him in February, 1866."

From this statement it will be perceived that the testimony of the witnesses Ensign and Thompson respectively tend, to show, that the mare kept by them for Stiles, is not the mare in controversy ; but in order to render their testimony relevant in the case, it must also tend to show that it is the mare sold by Stiles to Constans; and as the time during which it appears they kept the mare did not extend to a period later than the 3d of January, 1866, and as it also appears that Constans first got the mare from Stiles about ten days or two weeks before the 3d of February, 1866, it might still be, that although Stiles had no other mare down to the 3d of January, 1866, as stated by Ensign and Thompson, he might, so far as their testimony alone is concerned, have procured the mare sold to Constans in the interim between these dates.   Unless, therefore, there is some other testimony in the case tending to fill this hiatus, it would perhaps not be proper to submit the testimony of the witnesses Ensign and Thompson to the jury.

But it appears from the testimony of Constans that the mare he bought of Stiles was sold to Stiles by one Cal. Church; it also appears by Libby's testimony, that the mare sold by Church to Stiles was branded plainly with U. S. on left shoulder and C. on the hip; and that the sale of the mare to Stiles was some time previous to the time Constans got her from Stiles, which was about the 20th of January, 1866, but what time previous thereto does not appear.

The testimony of Ensign and Thompson shows that down to the 3d of January, 1866, Stiles owned a mare plainly branded with the same letters in the same places; and in addition to this there is testimony tending to show that the description of the mare given by Ensign and Thompson, which is very full

and particular, corresponds in many other respects, namely as to color, traits of disposition, white star on forehead, and the size of such star, and perhaps others, with the description of the mare sold by Stiles to Constans.

The testimony of Libby and Constans, then, shows that some time previous to January 20, 1866, Church sold to Stiles the mare described by them. The testimony of Ensign and Thompson shows, that previous to January 20, 1866, to wit.: from the 17th of November, 1865, to the 3d of January, 1866, Stiles owned a mare described by them; and the testimony of Constans also shows that from the 20th of January to the 3d of February, 1866, Stiles owned the mare sold to him by Church, and that on the 3d of February he, Constans, purchased the mare of Stiles. The description of the mare given by Libby and Constans together is elaborate and detailed; the description given by Ensign and Thompson of the mare mentioned by them is also full and minute, and the description given by Ensign and Thompson of the Stiles mare, kept by them, corresponded, in the particulars above mentioned, with the description of the Church mare given by Libby and Constans.

We think the testimony of Ensign and Thompson, in connection with that of Libby and Constans, tends, in some degree at least, to show that the Stiles mare kept by them was the same mare sold by Church to Stiles previous to the 20th of January, 1866; and also tends in the same degree to show that it was the same mare sold by Stiles to Constans, and was not the mare in controversy. Its tendency in this direction was sufficient, we think, to give the defendant the right to have it submitted to the jury for their consideration, in connection with his other testimony in the case. The evidence of the witnesses Ensign and Thompson as to the character and description of the mare boarded by them for Stiles, was an

important part of the testimony, and was material in determining whether the mare referred to by them was the mare sold by Church to Stiles, and therefore the mare traded by Stiles to Constans; and the jury should have been allowed to consider it in passing upon that question. The instruction given at the plaintiff's request was, therefore, erroneous; and it follows, likewise, that the refusal of the court to give the modification requested by the defendant was erroneous.

The fact that the court "did instruct the jury that they should take all the testimony in the case into consideration in arriving at a conclusion as to whether the mare testified to by Ensign and Thompson was the same mare sold by Stiles to Constans," we think, does not cure the error. Construed, as this must be, in connection with the instruction given at the plaintiff's request, it must be either harmonized with that instruction, and qualified by it, or in conflict with, and contradictory to it, and, therefore, calculated to confuse the jury, and in either case erroneous.

The order denying a new trial is reversed.